IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ARGONAUT INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-11-2741 |
| WOLVERINE CONSTRUCTION, INC., et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Argonaut Insurance Company ("Argonaut") sued Robert J. Zimmerman ("Zimmerman") for violations of the Maryland Trust Fund Statute (the "MTFS"), Md. Code Ann., Real Prop. §§ 9-201, et seq. Pending is Argonaut's motion in limine to exclude evidence concerning a purported agreement between Argonaut and Zimmerman. For the following reasons, Argonaut's motion to exclude evidence will be denied.

I. Background

A. Factual Background[1]

On June 23, 2009, Evangel Cathedral executed a construction contract ("the Contract") with Wolverine Construction, Inc. ("Wolverine"), in which Wolverine agreed to construct the

---

[1] Unless otherwise noted, the facts are from the undisputed stipulation of fact in the pretrial order. See ECF No. 65 at 9-11.

Evangel Chapel project at 13901 Central Avenue, Upper Marlboro, Maryland (the "Project"). ECF No. 65 at 9-10. Argonaut, as surety, issued payment and performance bonds (the "Bonds"), for the Project naming Wolverine as Contractor and Evangel Cathedral as Owner. *Id.* at 10. The Bonds assured Evangel Cathedral that, if Wolverine did not perform its contractual obligations -- such as paying Wolverine's subcontractors -- Argonaut was required to. *Id.* In partial consideration for the Bonds, Wolverine, Wolverine Contractors, and Wolverine Management (collectively "the Indemnitors"), executed a General Indemnity Agreement ("the Indemnity Agreement") in favor of Argonaut; under that agreement they were required to indemnify Argonaut for any loss suffered from issuing the Bonds. *Id.* Zimmerman signed the Indemnity Agreement as the Corporate Secretary of the Indemnitors. *Id.* Zimmerman did not sign the Indemnity Agreement in his individual capacity. *Id.*

In 2009 and 2010, Wolverine did construction work on the Project. ECF No. 65 at 10. Evangel Cathedral paid Wolverine $3,883,026.08 for its work on the Project. *Id.* at 11. On July 26, 2010, the President of Wolverine, Douglas Dillon, died. *Id.* On February 14, 2011, Evangel Cathedral declared default under the Contract and asserted that Wolverine had failed to pay its subcontractors and suppliers, had failed to substantially complete the Project, and was responsible for liquidated

2

damages. *Id.* By a February 14, 2011 letter, Evangel Cathedral advised Zimmerman that it would pursue its rights against him to the extent that construction trust funds were not properly paid to subcontractors and suppliers. *Id.* Wolverine's subcontractors and suppliers made claims against Argonaut's Bonds for Wolverine's non-payment for their work on the Project. *Id.* Wolverine informed Argonaut that the amounts were due and owing and provided Argonaut with statements of account for the claims of the subcontractors and suppliers. *Id.* Argonaut also requested that Evangel Cathedral release the remaining Contract funds to Argonaut. *Id.* After negotiations, Evangel Cathedral paid $237,191 to Argonaut. *Id.*

B.  Purported Agreement

Zimmerman asserts that, around the time of the Indemnity Agreement, Zimmerman and Argonaut reached an agreement for Zimmerman to invest $300,000 in Wolverine's capital in exchange for Argonaut not requiring Zimmerman to be personally liable for indemnification. *See* ECF No. 73 at 1-2; ECF No. 65 at 7. Zimmerman testified: "And they said, you put in $300,000 additional money and we won't make you sign bonds, and so I did." ECF No. 70, Ex. B at 150:1-3. Zimmerman further testified:

> Q. This is a general agreement of indemnity. You did not want to agree to sign bonds --

A.  As a guarantor.

Q.  You did not want to [be], we refer to it as an indemnitor, it's similar to guarantor, you did not want to be an indemnitor on this indemnity agreement; is that correct?

A.  Right, that's exactly what the discussion was, yes.

Q.  So, I just want to make sure we're clear. In your mind you agreed to put $300,000 into Wolverine Construction, Inc. so that you did not have to be an indemnitor on this agreement.

A.  That's exactly what the agreement was.

Q.  Was there anything else to that deal?

A.  That was it, I was not to be responsible.

Q.  As an indemnitor? I mean, was there anything broader than that document?

A.  I'm not a contractor, I didn't want anything to do with that, I wanted to help my friend. I did that. I got screwed and I screwed up, and here I sit.

ECF No. 70, Ex. B at 150:4-151:12. There is no dispute that Zimmerman did not sign the Indemnity Agreement in his individual capacity. See ECF No. 65 at 10; ECF No. 70 at 2.

C.  Procedural History

On September 23, 2011, Argonaut sued Zimmerman for violations of the MTFS in federal court based on diversity jurisdiction.[2] ECF No. 1. On January 21, 2014, Argonaut moved

---

[2] Because there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, this Court has jurisdiction. See 28 U.S.C. § 1132(a).

4

*in limine* to exclude all evidence about the purported agreement between Zimmerman and Argonaut. ECF No. 70. On January 29, 2014, Zimmerman opposed the motion. ECF No. 73. Argonaut did not reply.

II. Analysis

A. Motion to Exclude Evidence of Purported Agreement

Argonaut argues that evidence about the purported agreement should be excluded because it is irrelevant to Argonaut's claim against Zimmerman for violation of the MTFS. See ECF No. 80 at 4. Argonaut contends that the purported agreement only relates to indemnification, and Argonaut "will not be offering any evidence that Zimmerman is obligated to indemnify Argonaut for breach of the Indemnity Agreement." ECF No. 80 at 4. Zimmerman argues that the agreement is relevant because he believed his $300,000 contribution would fulfill any obligation he had to compensate Argonaut for its losses related to the Project. See ECF No. 73 at 4.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. Fed R. Evid. 401. Evidence that is not relevant is generally not admissible. Fed R. Evid. 402. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed R. Evid.

403. "A district court has wide discretion in admitting or excluding evidence under Rule 403." *United States v. Kelly*, 510 F.3d 433, 437 n.3 (4th Cir. 2007) (internal quotation marks omitted).

Whether Zimmerman is obligated to indemnify Argonaut is not relevant to its claim for violations of the MTFS. Under the MTFS, upon receiving funds from an owner, a contractor must hold the funds in trust for the benefit of the subcontractor that performed the work. *See Ferguson Trenching Co., Inc. v. Kiehne*, 618 A.2d 735, 737-38 (Md. 1993). The MTFS holds an officer of a contractor "who knowingly retains or uses moneys held in trust . . . for any purpose other than to pay those subcontractors for whom the moneys are held in trust" personally liable to any person damaged by the action. Md. Code Ann., Real Prop. § 9-202. Accordingly, the MTFS imposes liability on a basis independent from any indemnity obligation; thus an agreement excusing Zimmerman from indemnifying Argonaut is not relevant to his liability under the MTFS.

However, it is unclear if the purported agreement waived Zimmerman's responsibility to Argonaut more broadly than his indemnity obligations. If the purported agreement included a waiver of any other claims Argonaut may have against Zimmerman arising out of the Project, such as for violations of Zimmerman's trust obligations, the agreement is relevant to

Argonaut's MTFS claim. The MTFS does not expressly prohibit waiver of a party's right to seek damages.[3] Argonaut argues that the introduction of this evidence will confuse the issues, mislead the jury, and cause unfair prejudice. See ECF No. 70 at 4. Argonaut has not shown that the admission of this testimony would be unfairly prejudicial, and the Court is confident that the jury will be able to differentiate between an agreement about Zimmerman's indemnity obligations and an agreement waiving liability for breach of trust. Accordingly, Argonaut's motion to exclude evidence related to the purported agreement between Zimmerman and Argonaut will be denied.

III. Conclusion

For the reasons stated above, Argonaut's motion to exclude evidence will be denied.

4/17/14
Date

William D. Quarles, Jr.
United States District Judge

---

[3] Cf. Walter v. Atlantic Builders Grp., Inc., 180 Md. App. 347, 360-61 (Md. Ct. Spec. App. 2008) (holding that a contract provision did not waive liability for breach of trust under the MTFS).